Argued and submitted August 31, 2007, affirmed April 16, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD SCOTT CHASE,
*Defendant-Appellant.*

Lane County Circuit Court
200417992; A128052

182 P3d 274

David C. Degner, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals a judgment of conviction for felon in possession of a firearm. ORS 166.270. He assigns error to the trial court's denial of his pretrial motion to suppress physical evidence of three shotguns discovered during a search of his residence, arguing that there was no probable cause to search his residence because the affidavit in support of the search warrant did not establish a nexus between his residence and the alleged illegal activities occurring elsewhere on his property. Defendant also contends that the information in the affidavit supporting the warrant was too stale to establish probable cause. We affirm.

We begin by summarizing the contents of the affidavit, which was prepared by Officer Shepherd in support of a warrant request in March 2004 to search defendant's property in Cottage Grove for evidence of the possession, delivery, and manufacture of methamphetamine. Shepherd explained that, during the previous July, he had received information from a confidential reliable informant, CRI-1, that a person named Burt had been selling methamphetamine and marijuana for more than eight months from a trailer located on defendant's property, near an unattached garage that had been converted into an apartment.

Between September and November of that year, CRI-1 completed more than five controlled buys from Burt at Shepherd's direction. On each occasion, Shepherd watched as CRI-1, who was carrying only money, entered Burt's trailer, emerging a few minutes later without the money but carrying a substance later confirmed to be methamphetamine.

In October 2003, during the time period covered by those controlled buys, a concerned citizen, CC-1, contacted Shepherd and expressed an interest in assisting the police with narcotics-related investigations. CC-1 was familiar with methamphetamine sellers in Cottage Grove, including Burt, and had personally purchased methamphetamine from Burt on several occasions. CC-1 described Burt as "a major supplier of methamphetamine in the Cottage Grove area" and her trailer as a place from which methamphetamine could be purchased at "any time."

During the first two weeks of December 2003, CRI-1 completed another controlled buy, this time from "Krista," who lived in the unattached garage apartment on defendant's property and whom CRI-1 identified as defendant's 17-year-old stepdaughter. Shepherd ran a records check and confirmed that Krista was the daughter of defendant's wife and was 19 years old. CRI-1 reported that defendant's wife was aware of drug sales on her property and that CRI-1 had personally witnessed more than three drug transactions that had occurred in the presence of defendant's wife. CRI-1 also reported having been present when controlled substances were sold inside the residence.

In January 2004, six months into surveillance of the property and two months before seeking the warrant at issue, Shepherd began working with a second informant, CRI-2. That informant told Shepherd that Burt sold "large quantities"—approximately two ounces per day—of methamphetamine from her trailer.

Shortly before Shepherd obtained the warrant, another Cottage Grove police officer, White, recounted to Shepherd several conversations he had had with a concerned citizen, CC-2. On February 19, CC-2 told White that a "bald-headed guy" was acting as a lookout on defendant's property. A few days later, CC-2 reported that the same person had been seen carrying "an AK-47 assault rifle with a banana clip" on the property. Soon after that, CC-2 identified the lookout by name. Background checks revealed that the lookout had a felony conviction for possession of controlled substances, that a warrant had been issued for his arrest for a parole violation, and that Burt was on probation for three separate drug possession convictions.

Having collected that evidence over an eight-month period, Shepherd sought a search warrant for defendant's property, including the residence. In addition to the foregoing facts, he declared in his affidavit that, from his training and experience, he knew that persons who sell drugs are frequently users who generally "keep personal use amounts on hand in their homes, outbuildings, vehicles and on their persons." He also stated that illegal sellers of controlled substances "often keep larger inventories of controlled substances for future sales within their residences, curtilage,

vehicles and [on their] persons" and that, in his experience, "person[s] who sell[ ] or possess[ ] methamphetamine will have firearms" to protect themselves, their drugs, and their money. The magistrate issued a search warrant on March 8, 2004.

While officers were executing the warrant the following morning, Shepherd asked defendant whether there were any guns in the residence. Although defendant initially denied that there were any, he later informed Shepherd that there were three shotguns in his bedroom closet but stated that they did not belong to him because, as a felon, he was barred from possessing firearms.

Defendant was charged with felon in possession of a firearm. As noted earlier, he moved to suppress evidence of the shotguns, contending that the affidavit did not establish the necessary connection between the illegal activities described and the residence, as opposed to other parts of defendant's property, and was based on "stale" information. The trial court denied the motion and, following a trial to the court on stipulated facts, defendant was convicted.

On appeal, defendant concedes that there was probable cause to search Burt's trailer and his stepdaughter's garage apartment. Nevertheless, he argues that probable cause did not extend to his residence because the affidavit did not establish a nexus between the illegal activities described and his residence. Defendant also contends that the information in the affidavit implicating his property in the sale of drugs was stale because the information either was undated or had taken place months before the warrant was issued. The state responds that defendant's residence was the site of at least one drug sale and that defendant's stepdaughter, who could reasonably be expected to have access to defendant's residence, was connected to at least one drug sale in the garage apartment. The state further contends that the information in the affidavit was not stale, but instead established evidence of a continuous drug operation on defendant's property.

In reviewing a trial court's determination that probable cause existed to issue a warrant, we examine the facts in the supporting affidavit in a "commonsense, nontechnical

and realistic fashion, looking at the facts recited and the reasonable inferences that can be drawn from those facts," to determine, as a matter of law, whether it permits "a conclusion by a neutral and detached magistrate that the items specified in the warrant will probably be found in a specified place to be searched." *State v. Wilson*, 178 Or App 163, 166-67, 35 P3d 1111 (2001). That probability standard requires less than a certainty, but more than a mere possibility. *Id*. at 167. We defer to the issuing magistrate's determination of probable cause and resolve doubtful cases by the preference for warranted searches. *State v. Pelster/Boyer*, 172 Or App 596, 600, 21 P3d 106, *rev den*, 332 Or 632 (2001).

■■■ We begin with defendant's contention that the affidavit did not establish a connection between the illegal activity elsewhere on his property and his residence. An affidavit in support of a warrant must include facts that establish a nexus between the places to be searched and the objects sought. *State v. Gloster*, 145 Or App 555, 558, 932 P2d 68 (1997). Generally, a building's proximity to the home of a person who is suspected of possession of controlled substances establishes the requisite nexus. *Id*. Nevertheless, when a building is owned or occupied by persons other than those suspected of criminal activity, something more than mere proximity is required. *State v. Thibodeaux*, 173 Or App 353, 357, 22 P3d 248 (2001).

Here, the police sought evidence of the crimes of unlawful possession, distribution, and manufacture of controlled substances, including weapons, based on evidence of drug sales conducted on defendant's property by persons other than defendant. We conclude that the affidavit established the required nexus between the items sought and defendant's residence. We do so without relying on an inference, which the state urges us to draw, that defendant's stepdaughter shared defendant's residence, even though she maintained living quarters in the garage. Nonetheless, we do consider the stepdaughter's relationship with the occupants of the residence, defendant and his wife, to be a factor supporting probable cause. Additionally, the affidavit indicates that, on at least one prior undated occasion, drugs were sold inside defendant's residence and that defendant's wife, who

resided in the residence, was aware of drug sales on the property.[1] Those facts, in light of evidence showing that an individual with a felony conviction for unlawful possession had recently been seen acting as a lookout and carrying an assault rifle on defendant's property, would permit a magistrate to conclude that evidence related to unlawful possession, distribution, and manufacture of controlled substances could be found in defendant's residence.

■■ We turn next to defendant's assertion that the information in the affidavit was stale. Because probable cause must exist at the time a warrant is issued, whether the facts in an affidavit are stale is an important consideration. *State v. Howell*, 93 Or App 551, 559, 763 P2d 179 (1988), *rev den*, 307 Or 405 (1989). Staleness is a "shorthand description of the analysis about whether or not the evidence sought will be there after the length of time since the event described in the affidavit occurred." *State v. Young*, 108 Or App 196, 204, 816 P2d 612 (1991), *rev den*, 314 Or 392 (1992). Length of time is but one factor in the analysis. *Id.* Others include "the character of the crime or the thing to be seized and whether, under the circumstances, the evidence is likely to be moved or consumed." *Id.* Evidence that conduct has continued over time can support an inference that it was ongoing at the time the warrant was issued. *See State v. Mituniewicz*, 186 Or App 95, 105, 62 P3d 417, *rev den*, 335 Or 578 (2003).

■ Oregon courts have long emphasized that information about drugs is prone to staleness. *See State v. Ingram*, 251 Or 324, 328, 445 P2d 503 (1968) (an affidavit referencing a month-old drug sale was insufficient to establish probable cause because drugs are "easily disposable and transportable"). Nevertheless, information that might otherwise be

---

[1] In reviewing affidavits based on information provided by confidential informants, our determination of the veracity and reliability of the informant is part of our general obligation to construe the affidavit in a "commonsense and realistic fashion" to determine from the totality of the circumstances whether probable cause exists. *See State v. Forker*, 214 Or App 622, 629, 168 P3d 279 (2007), *rev den*, 344 Or 280 (2008) (explaining the classes of informants generally used in affidavits and their effect on the court's review of the affidavit). Although the affidavit in this case does not explain the basis of the informant's knowledge that defendant's wife was aware of the drug sales on the property, we conclude, in light of the overall accuracy of other statements provided by the informant, that the informant's statement regarding defendant's wife's knowledge was reliable.

stale can be "refreshed with more recent information that provide[s] a basis for concluding that criminal activity continued at the stated location." *State v. Castro*, 194 Or App 109, 118, 93 P3d 815 (2004) (emphasis omitted). For example, in *State v. Gale/Rowden*, 105 Or App 489, 497-98, 805 P2d 158, *rev den*, 311 Or 427 (1991), we held that two-year-old information that the defendant was manufacturing methamphetamine was refreshed by a report that, just two weeks before the warrant was sought, the operation continued at the same location.

■      Here, there was more than ample evidence of an ongoing drug sales operation from defendant's property. At the time that Shepherd began his investigation, Burt had been selling methamphetamine from a trailer on defendant's property for at least eight months. Several controlled buys occurred from Burt's trailer from September to November 2003 and from the garage apartment occupied by defendant's stepdaughter in December 2003. Finally, shortly before the warrant application, police were informed that an individual with a felony conviction for unlawful possession was twice seen patrolling defendant's property, armed with an assault rifle on the second occasion. As Shepherd explained in his affidavit, people who sell and possess methamphetamine frequently have firearms to protect themselves and their drugs. Accordingly, the later evidence of the armed lookout on the property supported an inference that drug sales were continuing on defendant's property at the time the warrant was issued.

Affirmed.