710 June 17, 2026 No. 558

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ZACHARY JAMES BAKER,
*Defendant-Appellant.*

Yamhill County Circuit Court
22CR28753; A182049

Ladd J. Wiles, Judge.

Argued and submitted April 21, 2025.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, Hellman, Judge, and O'Connor, Judge.

O'CONNOR, J.

Reversed and remanded.

**O'CONNOR, J.**

Defendant appeals from a judgment of conviction for 10 counts of second-degree encouraging child sexual abuse, ORS 163.686, and 10 counts of encouraging sexual assault of an animal, ORS 167.341. The trial court entered the judgment following defendant's entry of conditional guilty pleas pursuant to ORS 135.335(3), which permits a defendant to reserve "in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion." Defendant reserved in writing the right to a review of the trial court's denial of his motion to suppress.

In a single assignment of error, defendant maintains that the trial court erred when it denied his motion to suppress evidence obtained through a warranted search of defendant's residence and the seizure of his electronic devices.[1] Defendant first contends that the warrant was invalid because the information contained in the supporting affidavit—a seven-month-old tip that a Dropbox account associated with defendant contained a single video of child sexual abuse material (CSAM)—was too stale to supply probable cause. Even if the affidavit was not stale, defendant argues that the warrant was overbroad because the affidavit did not establish probable cause to seize each of defendant's devices. We conclude that the warrant was invalid because the information provided by the tip was stale and the affidavit did not otherwise establish probable cause to believe that evidence of the crimes would be found at defendant's residence. Accordingly, we reverse and remand.

We state the uncontroverted facts as recited in the affidavit supporting the application for the search warrant. *State v. Meyers*, 338 Or App 59, 62, 565 P3d 463 (2025). On December 7, 2021, Detective Winters submitted an affidavit in support of a search warrant application. According to the affidavit, on October 5, 2021, Winters received a tip from

---

[1] The warrant defendant challenges on appeal did not authorize the search of the devices' contents. Law enforcement seized the contents of the devices under the authority of the warrant defendant challenges on appeal and later searched them pursuant to defendant's written consent. Defendant revoked his consent, and law enforcement obtained a second warrant to search the devices. On appeal, defendant does not challenge either the voluntariness of his consent or the validity of the second warrant.

the National Center for Missing and Exploited Children (NCMEC), an organization that processes reports of child sexual exploitation, including CSAM, and shares that information with appropriate law enforcement agencies. The NCMEC report stated that on May 16, 2021, a video depicting CSAM was uploaded to a Dropbox account associated with defendant. Winters wrote that "the Reporting Electronic Service Provider," here, Dropbox, viewed the video and reported it to NCMEC. NCMEC described the video as "contain[ing] imagery of a prepubescent minor engaging in a sex act." The report identified the email address, the username, and three internet protocol (IP) addresses associated with defendant. Comcast records connected one of those IP addresses to a residence in McMinnville, which matched the residence listed on defendant's Oregon driver's license.

The December 7 affidavit recited that, after receiving the tip, Winters applied for a search warrant for the Dropbox account, and the magistrate issued a warrant. When Winters executed that warrant, Dropbox notified Winters that it had no records related to the account because such records are preserved for only 90 days and that preservation period had expired prior to the start of his investigation.

The December 7 affidavit also set forth Winters's training and experience relevant to CSAM investigations. Winters averred that "the electronic distribution" of CSAM "occurs through the duplication, rather than the transfer, of electronic data from a source computer to a destination computer." When that process is completed, "the data exists on both the source and destination computers." Winters further averred that "CSAM is typically collected, stored, and distributed by individuals that trade in this type of illegal activity" and "contraband of this type can and is usually stored for indefinite amounts of time by the possessors of this illegal contraband." Winter's affidavit also describes cloud-based storage. According to Winters, Dropbox "provides cloud-based storage of data," which "allows access from anywhere and everywhere with digital devices" and permits a user to interact "with the data contained within the cloud service, without having to synchronize the same data between devices." Even if accessed from an off-site location, a collector will

"sometimes maintain the ability to view and store [CSAM] in their residence or a secure and easily accessible place." Some consumers of CSAM will "also conceal their illegal images on internet based cloud storage accounts to avoid physical possession of the images." Winters averred that "[e]vidence of these online cloud storage accounts can still be located on the suspects['] electronic device and is valuable evidence."

A magistrate issued the warrant, which authorized the search of defendant's residence for "[a]ny electronic device capable of accessing, uploading to, and downloading from Dropbox Inc. and/or a Dropbox account for 5/1/21-6/1/21." If any such device was found, the warrant authorized the seizure of the device and authorized the search and seizure to extend to "additional hardware and storage devices located in the nearby vicinity."

On December 9, 2021, law enforcement executed the search warrant and seized two iPhones, two tablets, and two laptops from defendant's residence. Defendant was present during the search, and he told officers that he watches "animal stuff" and videos labeled "petite," although he said that he tried to avoid content that depicted children. Defendant then consented to a search of the devices' contents. The next day, on December 10, 2021, defendant revoked his consent. By that time, law enforcement had completed a forensic examination of defendant's cellphone and identified 22 files that either contained CSAM or depicted the sexual assault of an animal. Police used defendant's statements and the results of the search of his cellphone to obtain a second warrant after defendant withdrew his consent.

Defendant filed a motion to suppress the results of the search warrants, making essentially the same arguments that he raises on appeal.[2] The trial court denied the motion, concluding that the approximately seven-month gap between the report from NCMEC and the application for the search warrant did not render the information too stale to provide probable cause.

_____

[2] Below, defendant moved to suppress the results of both search warrants. As noted previously, on appeal, defendant does not independently challenge the validity of the second warrant except to the extent that the unlawful first warrant presumptively tainted all that followed, including the second warrant.

On appeal, defendant first argues that the information contained in the affidavit was stale, and therefore, the warrant lacked probable cause to justify the search of his residence. In defendant's view, the affidavit is premised on a single, seven-month-old tip and lacks objective facts that would establish that defendant is a collector or persistent consumer of CSAM. Without the predicate fact that he is a collector or persistent consumer of CSAM, defendant contends that Winters's training and experience is all that remains in the affidavit. That, by itself, does not support a conclusion that CSAM or any associated evidence would probably be found in defendant's residence or on his devices, he argues.

The state responds that the warrant was supported by probable cause that was not stale. In the state's view, the affidavit provided a case-specific fact to confirm that defendant's possession of CSAM in May 2021 was consistent with a pattern of collection, specifically, that defendant had uploaded CSAM to Dropbox, a site designed for the storage of data.

As we explain below, the information in the affidavit was stale, and the affidavit otherwise failed to establish the necessary factual predicate that defendant was a collector or persistent consumer of CSAM. Accordingly, we conclude that the warrant lacked probable cause.

We review for legal error whether an affidavit supporting a magistrate's issuance of a warrant establishes probable cause. *State v. Castilleja*, 345 Or 255, 264, 192 P3d 1283, *adh'd to on recons*, 345 Or 473, 198 P3d 937 (2008). A reviewing court "asks whether, based on the facts shown by the affidavit, a neutral and detached magistrate could conclude (1) that there is reason to believe that the facts stated are true; and (2) that the facts and circumstances disclosed by the affidavit are sufficient to establish probable cause to justify the search requested." *Id.* Because we are in the same position as a trial court ruling on a motion to suppress that challenges a magistrate's issuance of a warrant, we do not defer to the trial court's findings or conclusions. *State v. Klingler*, 284 Or App 534, 540, 393 P3d 737 (2017). We view the affidavit in a "commonsense, non-technical and realistic fashion," and "we resolve doubtful or marginal cases in favor of the preference for warrants." *State v. Gustafson*, 300

Or App 438, 444, 452 P3d 962 (2019), *rev den*, 366 Or 493, *cert den*, __ US __, 141 S Ct 858 (2020).

Article I, section 9, of the Oregon Constitution provides, in relevant part, "[N]o warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."[3] Probable cause exists "when the facts set out in the affidavit would lead a reasonable person to believe that seizable things will probably be found in the location to be searched." *Klingler*, 284 Or App at 540 (internal quotation marks omitted). Probable cause requires "not just a mere possibility that evidence would be found in a place to be searched, rather it demands that it is more likely than not." *State v. James*, 336 Or App 55, 63, 560 P3d 747 (2024) (internal quotation marks omitted).

When the information in an affidavit describes a prior event or circumstance, the passage of time may make a fact "stale" and detract from probable cause. *State v. Ulizzi*, 246 Or App 430, 437-38, 266 P3d 139 (2011), *rev den*, 351 Or 649 (2012). The purpose of the staleness analysis is to determine whether, "given the time between the event described and the issuance of the warrant, there is a reasonable inference that the evidence will be where the affidavit suggests." *Id.* at 438 (internal quotation marks omitted). "Staleness is an important factor when considering probable cause, because probable cause must exist at the time the order is issued." *State v. Van Osdol*, 290 Or App 902, 909, 417 P3d 488 (2018) (internal quotation marks omitted). To assess staleness, we have identified five factors to consider, although we are mindful that we consider the totality of facts in the affidavit: (1) the length of time; (2) the perishability versus the durability of the item; (3) the mobility of the evidence; (4) the nonexplicitly inculpatory character of the evidence; and (5) the propensity of an individual suspect or general class of offenders to maintain and retain possession of such evidence. *Id.* We describe the relevant case law on each factor because those cases illustrate why the probable cause in this affidavit was stale at the time that it was

---

[3] The legislature has also codified requirements for search warrants, including a probable cause requirement in ORS 133.555(2). Defendant relies on Article I, section 9, not a statute. Thus, we discuss Article I, section 9.

issued by the magistrate and the cases provide important context for our discussion of the parties' arguments, below.

As to the first factor, generally, the probability of evidence being in a location lessens as the time lengthens between an event described in an affidavit and the issuance of a warrant. *Gustafson*, 300 Or App at 446. Even when there is a relatively long gap, probable cause may still exist if the totality of the circumstances permits a magistrate to reasonably infer that a defendant would have retained the evidence or would have created additional, similar evidence. *Id.* at 447. For example, in *Gustafson*, the defendant coached children at a gymnastics gym. *Id.* at 439. The affidavit in support of the search warrant established probable cause that the defendant had recently sexually abused four girls that he coached during sleepovers at the gym. *Id.* The affidavit also stated that an employee had discovered sexually suggestive photographs of young gymnasts on the defendant's computer 10 years earlier. *Id.* at 441-42. A magistrate issued a search warrant for police to search the defendant's home, gym, and vehicles for digital devices capable of storing the type of sexually suggestive photos observed by the employee. *Id.* We concluded that, although the length of time between the employee's discovery and the issuance of the warrant was long, the information was not stale because the facts in the affidavit gave rise to a "strong inference that [the] defendant would have kept the photographs or produced more." *Id.* at 449. Specifically, additional information in the affidavit suggested that the defendant was still sexually attracted to young girls and that he continued using his gym as a means of obtaining access to them. The affidavit included multiple current allegations of sexual abuse occurring at "sleepovers" at the gym, and the defendant stated that he had run those sleepovers for years. *Id.* at 449-50.

As to the second and third factors, the perishability and mobility of the evidence, we consider "the character of the crime and the thing to be seized." *State v. Corpus-Ruiz*, 127 Or App 666, 670, 874 P2d 90 (1994). For instance, information about drugs is particularly prone to staleness because drugs may be transported and consumed in short time periods. *Id.* Thus, in *Corpus-Ruiz*, we concluded that a

six-month gap between a report of heroin use at the property in question and issuance of the search warrant made the probable cause stale because heroin "can be consumed in a short period of time and is easily moved." *Id.* Digital evidence, by contrast, is durable. *See Gustafson*, 300 Or App at 448 (observing that "digital photographs are inherently durable, as opposed to perishable or subject to being used up, like user amounts of drugs").

As to the fourth and fifth factors, a defendant is more likely to retain evidence if possession of the item is not by itself illegal. *See, e.g.*, *State v. Veley*, 37 Or App 235, 238, 586 P2d 1130 (1978), *rev den*, 285 Or 1 (1979) (explaining that condoms are not contraband, and it was therefore "reasonable to believe that the defendant would continue for some time to keep such items in" the place identified by the complainant). However, an affiant's training and experience may prevent evidence from being stale by establishing that a particular class of offenders has a propensity to retain evidence that is otherwise illegal to possess. *State v. Daniels*, 234 Or App 533, 540, 228 P3d 695, *rev den*, 349 Or 171 (2010). In *Daniels*, for example, the affiant's training and experience established that people who are sexually attracted to children often possess and retain sexually explicit material involving children. *Id.*

An affiant's training and experience by itself does not establish probable cause. Training and experience contribute to the probable cause calculus when an affiant connects their training and experience to a defendant's "particular conduct or circumstances" and supports their training and experience with "objective facts derived from other sources." *Id.* That type of evidence of an affiant's training and experience may be sufficient to establish probable cause despite a significant lapse of time between the event described in the affidavit and the issuance of a warrant. *Id.* at 540-41.

In *Daniels*, the detective who wrote the affidavit received a tip that the defendant had sexually abused his daughter 20 years prior, and on one occasion, the defendant had attempted unsuccessfully to videotape a sexual act with his daughter. *Id.* at 535. A young foster child was currently

living with the defendant in his home, and the defendant had sexually abused the child as recently as nine months before the application for the search warrant. *Id.* at 535-36. The detective also averred that in his training and experience, "pedophiles often retain correspondence, photographs, diaries, magazines and movies in reference to their deviance" and that "pedophiles rarely dispose of their sexually explicit material[.]" *Id.* (internal quotation marks omitted). A magistrate issued a search warrant authorizing the seizure of, among other items, any photographs, videotapes, or recording devices in the defendant's residence that likely contained illegal materials. *Id.* at 536-37. Law enforcement executed the warrant and seized videotapes that contained CSAM. *Id.* at 537.

On appeal, the defendant argued that the affidavit failed to establish probable cause to search and seize the videotapes. *Id.* at 537. We explained that the daughter's report that the defendant had once attempted to videotape a sexual act, by itself, would not have established probable cause because it "was at least 20 years old, and it involved only an unsuccessful attempt to create such material." *Id.* at 539-40. However, we concluded that the officer's training and experience that people who are sexually attracted to children often retain "deviant" movies, together with the objective fact that nine months prior, the defendant had sexually abused a child who was still living in his house, logically led to the conclusion that videotapes containing CSAM were probably in the defendant's residence. *Id.* at 541. We therefore concluded that the warrant was supported by probable cause. *Id.*

If the information in an affidavit is stale, it may be "refreshed with more recent information that provides a basis for concluding that criminal activity continued at the stated location." *State v. Chase*, 219 Or App 387, 393-94, 182 P3d 274 (2008) (internal quotation marks and brackets omitted). For example, in *Van Osdol*, an affidavit established that a confidential informant engaged in two controlled purchases of an undisclosed amount of heroin from two dealers in a 30-day period, the most recent purchase occurring 96 hours prior to the issuance of the warrant. 290

Or App at 904. Neither the informant nor the dealers were residents of the house at which the buys took place, which was the defendant's residence. *Id.* We held that a search warrant authorizing law enforcement to search the property failed to establish probable cause that evidence of an ongoing drug distribution enterprise would be in the defendant's residence. *Id.* at 908. As previously noted, drug evidence is particularly prone to staleness. *Id.* at 908-09. Even though the detective averred that, in his training and experience, records and other evidence of drug trafficking, such as cash, scales, and baggies, are often kept for long periods of time in locations controlled or accessed by traffickers, "the facts in the affidavit fail[ed] to establish the necessary predicate on which he relies: that the dealers *** engaged with [the] defendant or anyone else at the house in 'ongoing high volume' drug trafficking." *Id.* at 910. Specifically, the affidavit did not establish that any additional amounts of narcotics beyond what was involved in the two controlled buys, or any other items associated with narcotics enterprises, would be present in the house, and "past possession of an unknown amount of a transportable and consumable drug by a visitor is not sufficient to establish that the drug probably will be found at the residence four days later." *Id.*

Returning to the case before us, we conclude that the warrant lacked probable cause because the evidence of defendant's illegal activity was stale under the totality of the circumstances. Starting with the length of time, the warrant issued approximately seven months after NCMEC received the tip from Dropbox regarding defendant's account. Seven months is not, by itself, too long to establish probable cause for digital evidence of an offense, as our decisions in *Daniels* and *Gustafson* illustrate. In this case, however, by the time law enforcement obtained a search warrant for the Dropbox account in December 2021, the video that had triggered the NCMEC report in May 2021 no longer existed in defendant's account, and the affidavit does not establish whether the account was still active or contained any other files.

As to the second factor, durability, digital evidence is durable. But the fact that digital evidence was once in a person's cloud-based account does not, without more, establish

that the digital evidence is probably on that person's device seven months later. The affidavit here does not permit a reasonable inference that the single digital video containing CSAM, or other CSAM evidence, was more likely than not on a device in defendant's residence seven months after a Dropbox employee viewed the video. The durable nature of digital evidence makes it probable the image exists somewhere. But the affidavit in this case established that it no longer existed in the location where it was originally observed—defendant's Dropbox account. And the affidavit lacks evidence that it was instead probably on one of defendant's devices.

The third factor, mobility, generally supports the state's argument that digital evidence probably remains on a device, in some form, even after the evidence has been uploaded or a person has attempted to delete the evidence. Winters explained in the affidavit in this case that forensic examination of digital devices can locate evidence in those circumstances. Thus, digital evidence is not "moved" from one location to another in the same way as physical evidence. Again, however, the affidavit fails to connect that general premise to the circumstances of this case. Winters's affidavit also provided contradictory statements that people with a sexual interest in children both keep CSAM on their devices for private viewing *and* avoid keeping CSAM on their devices, instead relying solely on cloud-based services to avoid having illegal material on their devices. The affidavit does not provide evidence of where the CSAM video was uploaded from. Thus, even accepting that a forensic examination of the device from which the CSAM in the Dropbox account was uploaded probably would find evidence of the video, the affidavit fails to establish probable cause that the video was ever on one of defendant's devices.

On the fourth and fifth factors, the propensity of a class of offenders to obtain and retain CSAM, which is explicitly illegal, Winters's statements about the propensity of people with a sexual interest in children to obtain and retain CSAM also fails to sufficiently connect the affidavit's general premise to the facts of this case. The deficiencies in this case are illustrated by comparing them to our prior cases on which the state relies. Those prior cases involved

affidavits that established probable cause of ongoing sexual offenses against children. In *Gustafson*, the affidavit established that the defendant had stored CSAM on the computer at his gym 10 years ago. The affidavit also established probable cause that the defendant had continued to use his gym to obtain access to and sexually abuse children. In light of that evidence of an ongoing pattern of sexual offenses against children, the 10-year-old information about CSAM on the defendant's computer was not stale.

Here, by contrast, there is scant case-specific evidence in the affidavit. The affidavit included the report of only a single CSAM video in defendant's Dropbox account seven months earlier. The video no longer existed in the account. The affidavit does not establish how the video was placed in defendant's account or whether defendant viewed it. And the affidavit contains no evidence that the video was part of a pattern of possession of CSAM by defendant or that defendant had sexually abused a child.

The state argues, relying on *Daniels*, that Winters's attestation that CSAM is typically collected and retained for indefinite periods of time, along with the case-specific fact that defendant had uploaded the file to Dropbox, a site designed for the storage of files, together lead to the conclusion that defendant had probably stored CSAM on his devices. However, in *Daniels*, the evidence established that the defendant's criminal activity had persisted over a 20-year period. Although the affidavit established that the most recent known offense committed by the defendant occurred nine months prior, the child he was seen abusing was still living in the home with the defendant. By contrast, here, the affidavit contains no evidence that defendant had sexually abused a child. The affidavit presents no case-specific evidence of a pattern of criminal conduct by defendant. It contains no case-specific evidence of present criminal conduct on defendant's part. Moreover, as previously noted, the fact that defendant had not in fact retained the video in Dropbox undercuts the state's assertion that defendant's conduct is consistent with a pattern of collection or file retention.

We further conclude that Winters's training and experience is insufficient to establish a pattern of behavior in

this case that would revive the stale information. Although Winters averred that consumers of CSAM typically collect CSAM and retain it for indefinite periods of time, he also averred that consumers of CSAM "conceal their illegal images on internet based cloud storage accounts to avoid physical possession of the images" and to allow access to those files "without having to synchronize that same data between devices," and that "Dropbox accounts have the capability of sending (sharing) files and folders with other Dropbox users." But the objective facts in the affidavit fail to establish that defendant's upload of the video indicates that he was taking steps to remove the image from his device to avoid physical possession or that he was taking steps to store a file of his collection in a location accessible across multiple devices. Moreover, the affidavit does not provide facts that make it probable that defendant possessed it on his own device instead of moving the video to his Dropbox folder from some other location, such as another person's cloud-based storage account.

Thus, the affidavit failed to establish a necessary factual predicate: that defendant was a collector or persistent consumer of CSAM. Without that factual predicate, or any additional facts to "refresh" probable cause, the court could not reasonably infer that CSAM would probably be located in defendant's residence or on his devices. Because the warrant lacked probable cause, it was invalid, and the trial court erred by denying defendant's motion to suppress.

We do not necessarily disagree with the state that, under Article I, section 9, the durability of digital evidence, an affiant's training and experience establishing the propensity of CSAM consumers to retain a collection of files for indefinite periods, and case-specific evidence supporting a reasonable inference that the defendant is a persistent consumer of CSAM might be sufficient to overcome staleness. *Cf., e.g.*, *State v. Edwards*, 2024 ME 55, ¶ 14, 320 A3d 387, 392-93 (2024) (holding that probable cause did not become stale after a six-month period between an NCMEC tip and the issuance of a warrant where the affidavit established that the defendant had previous convictions for possession of CSAM, law enforcement had received multiple tips associated with the same IP address, and CSAM consumers have

a propensity to retain the evidence for significant periods of time); *United States v. Ebert*, 61 F4th 394, 401 (4th Cir), *cert den*, __ US __, 144 S Ct 149 (2023) (concluding that probable cause was not stale when an affidavit alleged that the defendant had taken sexually explicit photos of his daughter five to eight years earlier because "the property to be seized is not a consumable, like narcotics" and "law-enforcement experience supports the conclusion that individuals who possess such images rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes" (internal quotation marks omitted)). *Accord United States v. Raymonda*, 780 F3d 105, 117 (2nd Cir), *cert den*, 577 US 968 (2015) (holding that a warrant was not supported by probable cause because "absent any indicia that the suspect was a collector of [CSAM] likely to hoard pornographic files, *** a single incident of access does not create a fair probability that [CSAM] will still be found on a suspect's computer months after all temporary traces of that incident have likely cleared"). However, the state's evidence is exceptionally thin in this case. As we explained above, the affidavit in this does not resemble affidavit in other cases that allege facts that establish ongoing or persistent access to CSAM, links the defendant's access to CSAM directly to a propensity to store and collect such material, or establishes probable cause that the defendant has a persistent sexual interest in children. *See, e.g.*, *Daniels*, 234 Or App at 538-39 (the affidavit alleged that the defendant had sexually abused multiple children over a 20-year period and as recently as nine months prior); *see also United States v. Frechette*, 583 F3d 374, 381 (6th Cir 2009), *cert den*, 562 US 1053 (2010) (explaining that "[i]t is not likely that the defendant is someone who was innocently surfing the internet and accidentally paid $79.95 for a subscription" to a website distributing CSAM). Here, we conclude that the affidavit failed to sufficiently connect Winters's training and experience to defendant's conduct. Without that connection, the seven-month-old tip was stale, and the affidavit was insufficient to supply probable cause based on the upload of a single video, which no longer existed in defendant's Dropbox account. Therefore, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.