Argued and submitted March 10, decision of Court of Appeals reversed;
judgment of circuit court affirmed August 17, 2006

# STATE OF OREGON,
*Petitioner on Review,*

*v.*

# LISA ANN HENDERSON,
*Respondent on Review.*

## (C200201536B; CA A119000; SC S52749)

142 P3d 58

Rolf C. Moan, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Jamesa J. Drake, Deputy Public Defender, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

BALMER, J.

**BALMER, J.**

This case requires us to determine the validity of a search warrant that police officers used to search defendant's home for stolen property. The Court of Appeals held that the warrant was invalid because, in that court's view, the evidence in the supporting affidavit was insufficient to allow the magistrate to find probable cause to issue the warrant. *State v. Henderson*, 200 Or App 225, 113 P3d 944 (2005). We allowed the state's petition for review and, for the reasons set out below, reverse the decision of the Court of Appeals.

We take the facts from the Court of Appeals opinion and from the record. On November 7, 2001, Detective Robert Carpenter of the Roseburg Police Department submitted an affidavit requesting a warrant to search defendant's home. The affidavit specifically described the premises that Carpenter wished to search as:

> "The residence located at 1238 M Street[,] Springfield[,] Lane County, Oregon. The search is to include the residence of 1238 M Street[,] Springfield[,] Lane County, Oregon, as well as any vehicles registered to or under the control of [defendant], outbuildings, travel trailers, tents, and curtilage properties."

In the affidavit, Carpenter explained that he had been investigating a theft of two purses that had contained, among other things, two diamond rings. One ring was a diamond solitaire, and the other was a platinum setting with five diamonds. Witnesses had told Carpenter that a woman named McCorquodale, who had been in the Roseburg area at the time of the theft, had been attempting to sell rings of that description. Carpenter's affidavit stated that he had located McCorquodale in Sutherlin, that she had admitted stealing the rings, and that she had told him that within the last three weeks she had given the rings to defendant in payment of a methamphetamine debt. According to the affidavit, McCorquodale had traveled to Springfield with Carpenter and pointed out defendant's residence to him. Carpenter then had verified with the local police that defendant lived at that residence. Carpenter also had verified with Driver and Motor Vehicle Services that the vehicle parked in the driveway was

registered in the name of the man that McCorquodale had identified as defendant's domestic partner.

Carpenter's affidavit described Carpenter's education and professional training and his experience investigating thefts, including a listing, in generic terms, of where persons "often times" or "sometimes" keep stolen property. That listing included the following possible locations: at the person's residence, in the person's vehicles, in the soil near the person's residence, in a travel trailer or outbuilding on the person's residence, on the person, and on third parties at the place to be searched. The affidavit also stated that, based on Carpenter's experience and training, he knew that persons who possess stolen property often will convert it to their own use.

After examining Carpenter's affidavit, the magistrate issued a search warrant authorizing Carpenter to search for the two diamond rings at the location that Carpenter had described. The warrant echoed the request in the affidavit, allowing police to search

"[t]he residence located at 1238 M Street[,] Springfield[,] Lane County, Oregon. The search is to include the residence of 1238 M Street[,] Springfield, Lane County, Oregon, as well as any vehicles registered to or under the control of [defendant], outbuildings, travel trailers, tents, and curtilage properties."

Carpenter and several other police officers executed the warrant the day that the magistrate issued it. The search initially revealed two glass pipes, one of which appeared to have been used for smoking marijuana and the other for smoking methamphetamine. After the officers found the pipes, defendant also showed the officers where she kept the rings. When the officers threatened to get another warrant to search for more evidence of illegal drugs, defendant's domestic partner showed the officers a hiding place in a metal shed on the premises that contained methamphetamine.

After defendant was charged with possession of a controlled substance and two counts of endangering the welfare of a minor,[1] she moved to suppress all the evidence that

---

[1] The charge of endangering the welfare of a minor was based on defendant's alleged possession and use of controlled substances in the home she shared with her domestic partner and their two young children.

the police had found in their search. Defendant contended, in part, that Carpenter's affidavit had not established probable cause to support the issuance of the warrant because it had provided insufficient information from which a judge could conclude that defendant had placed the rings at her residence or, if she had placed them there, that they still were there three weeks after McCorquodale had given them to her. Defendant based those arguments on the statutes governing issuance of a search warrant, ORS 133.525 to 133.703; Article I, section 9, of the Oregon Constitution; and the Fourth and Fourteenth Amendments to the United States Constitution. The trial court denied the motion to suppress, determining that there had been probable cause to issue the warrant because, in addition to Carpenter's asserted knowledge and experience, the magistrate also had been permitted to rely on the corroboration of the address and the description of the rings provided by McCorquodale and on Carpenter's independent verification of the address.

Defendant was convicted following a stipulated facts trial. She appealed, and, as noted, the Court of Appeals reversed. In its opinion, the court agreed with defendant that the affidavit was insufficient to establish probable cause to believe that the rings had been in defendant's home.[2] The court's primary reason for that conclusion was its concern that the affidavit had listed "myriad and diverse locations" where the rings might be found and that, in so doing, it had "diffus[ed]" the probability that the rings might be in any one of those locations. *Henderson*, 200 Or App at 237. As noted, the state filed a petition for review, which we allowed.

■    On review, the state argues that the affidavit established probable cause to believe, first, that the rings had been in defendant's residence and, second, that the rings were in defendant's residence three weeks after defendant had received them. We turn to the relevant statutes and constitutional provisions, and to this court's well-established precedents, to address those issues.[3]

---

[2] Because it decided the case on that ground, the Court of Appeals did not address whether the information concerning defendant's receipt of the rings had become "stale" and therefore insufficient to establish probable cause, in the three weeks between defendant's receipt of the rings and Carpenter's affidavit.

[3] The Court of Appeals expressly did not reach defendant's alternative argument that the search violated ORS 133.575(3). *See Henderson*, 200 Or App at 238

ORS 133.545 and ORS 133.555 govern the issuance of search warrants. ORS 133.545 provides that an application for a search warrant "shall be supported by one or more affidavits particularly setting forth the facts and circumstances tending to show that the objects of the search are in the places, or in the possession of the individuals, to be searched." ORS 133.545(4). A judge reviewing the application and supporting affidavit shall issue a search warrant if "there is probable cause to believe that the search will discover things specified in the application * * *." ORS 133.555(2). In addition to the statutory requirements just described, Article I, section 9, of the Oregon Constitution provides that "no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."[4]

■■ When reviewing a challenge to the sufficiency of an affidavit supporting a magistrate's issuance of a warrant, this court asks (1) whether there is reason to believe that the facts stated are true, and (2) whether the facts and circumstances described in the affidavit are sufficient to establish probable cause to search. *State v. Goodman*, 328 Or 318, 324-25, 975 P2d 458 (1999); *State v. Villagran*, 294 Or 404, 408, 657 P2d 1223 (1983). We analyze the affidavit in a common-sense manner, *State v. Moylett*, 313 Or 540, 552, 836 P2d 1329 (1992), and allow the magistrate to make reasonable

---

n 9 (noting that court did not need to and therefore did not address defendant's argument under ORS 133.575(3)). That statute provides that, "before undertaking any search or seizure pursuant to the warrant, the executing officer shall read and give a copy of the warrant to the person to be searched, or to the person in apparent control of the premises to be searched." ORS 133.575(3). Defendant maintained that the police officers violated ORS 133.575(3) by failing to read the warrant to defendant before beginning their search and that such a violation required that the evidence be suppressed. The trial court concluded that a technical violation of ORS 133.575(3) had occurred because the reading of the warrant had occurred contemporaneous with, rather than before, the search, but that such a violation did not rise to the level of a constitutional issue. We, too, reject defendant's argument, because, unless the violation has constitutional dimensions, a statutory violation ordinarily cannot serve as a basis for suppression. *See* ORS 136.432 (relevant and admissible evidence generally cannot be excluded based on statutory violation).

[4] Although the requirements of the warrant statutes and Article I, section 9, may not always be coextensive, the parties in this case make no argument that those provisions have different requirements in this case. Therefore, we discuss the requirements of those provisions together.

inferences from the facts stated therein. *State v. Ingram*, 251 Or 324, 326, 445 P2d 503 (1968). While adhering to the probable cause requirement, we resolve doubtful or marginal cases in favor of the preference for warrants. *State v. Tacker*, 241 Or 597, 602, 407 P2d 851 (1965).

"Probable cause" for purposes of ORS 133.555(2) exists when the facts set out in the warrant " 'lead a reasonable person to believe that seizable things will probably be found in the location to be searched.' " *Goodman*, 328 Or at 325 (quoting *State v. Anspach*, 298 Or 375, 381, 692 P2d 602 (1984)). That statutory definition also embodies the constitutional requirement of probable cause. *Anspach*, 298 Or at 380.

We now consider whether the issuance of the warrant in this case met the standard described above, *i.e.*, based on the affidavit, did the magistrate have a reasonable basis for believing that there was probable cause to search defendant's home for the rings? As explained below, we conclude that he did.

Carpenter's affidavit stated that defendant had possessed the rings at some point in the preceding three weeks. The affidavit also described where defendant lived, how Carpenter had learned that information, and the steps that he had taken to verify it. The affidavit included statements based on Carpenter's experience that it is common for persons who possess stolen property to hide that property in or around their homes and vehicles or to convert that property to personal use. Moreover, and even without Carpenter's statements about his experience, we think that the magistrate could rely on his own common sense and draw reasonable inferences from Carpenter's information about the rings and about defendant. The rings were nonperishable items of high value that would be easy to conceal, that retain their value, and that some people might find attractive to keep for personal use.[5] On the basis of all the information discussed

___

[5] Defendant argues, as a competing characterization, that defendant might have considered the rings a fungible substitute for currency—that was how she reportedly had gained possession of them in the first place—or might have wanted to dispose of the rings quickly lest they be discovered. Those interpretations are plausible, but the fact that there is another plausible way of thinking about the rings is irrelevant to our analysis here. As described above, this court's standard of

above, we conclude that the evidence before the magistrate supported the conclusion that there was probable cause to search defendant's residence.

That conclusion also compels us to reject defendant's argument that the evidence was too stale to support probable cause. If, as described above, the magistrate reasonably concluded that the nature of the rings—valuable, nonperishable items suitable for personal use—permitted the inference that defendant would have wanted to retain them, then it also is reasonable to conclude that defendant could have retained them for as long as three weeks, if not longer. It obviously is true that, in some cases, the passage of time may render formerly sound information stale. *See, e.g., State v. Ingram*, 251 Or 324 (information that individual possessing heroin was present in particular house on January 9 did not provide probable cause to support search of house on February 6). But this is not such a case.

For the above-stated reasons, we conclude that the magistrate's issuance of the warrant was proper and that the trial court correctly denied defendant's motion to suppress the evidence obtained pursuant to that warrant. In reaching that conclusion, we necessarily disagree with the Court of Appeals' determination that the warrant was insufficient because it had described "myriad and diverse locations" where the evidence might have been found. As we stated above, based on the information in the affidavit, the warrant authorized the police to search "[t]he residence located at 1238 M Street[,] Springfield[,] Lane County, Oregon. The search is to include the residence of 1238 M Street[,] Springfield, Lane County, Oregon, as well as any vehicles registered to or under the control of [defendant], outbuildings, travel trailers, tents and curtilage properties." That statement describes a location to be searched. It is true that the warrant is prolix concerning particular places *within* that location, but the fact that the affidavit and the warrant contained descriptions of multiple, specific places

---

review does not require us to determine the *most* likely place where the rings were, but only whether the information in the affidavit supported the conclusion that the rings "probably" would be found in the location to be searched.

within the identified location does not detract from the conclusion that there was probable cause to search the location itself.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.