Argued and submitted January 30, 2019; case no. 15CR44342 reversed and remanded, case no. 15CR50447 reversed and remanded May 20, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

YEVETTE JEAN SUNDERMAN,
*Defendant-Appellant.*

Deschutes County Circuit Court
15CR44342, 15CR50447;
A164915 (Control), A164916

467 P3d 52

In this consolidated criminal appeal, defendant appeals two judgments of conviction. In case number 15CR44342, the state charged defendant with a single count of unlawful possession of methamphetamine, ORS 475.894. In case number 15CR50447, the state charged defendant with one count each of unlawful delivery of methamphetamine, ORS 475.890, and unlawful possession of methamphetamine, ORS 475.894. Following the denial of her motions to suppress in both cases, defendant entered conditional guilty pleas to the charged crimes. On appeal, defendant contends that the trial court erred when it denied her motions to suppress in both cases, because the searches that resulted in the discovery of methamphetamine were not conducted pursuant to a search warrant and no exception to the warrant requirement provided a constitutional justification for either search. *Held*: The Court of Appeals accepted the state's concession that the trial court erred when it denied defendant's motion to suppress in case number 15CR44342 and reversed and remanded without further discussion. With regard to the trial court's denial of defendant's motion to suppress in case number 15CR50447, the Court of Appeals concluded that the state failed to offer sufficient evidence to prove that defendant actually consented to a search of her purse. Furthermore, the facts known to the officer at the time of the search did not provide the officer with probable cause to believe that methamphetamine would be found in defendant's car, and, thus, the automobile exception did not justify the warrantless search of defendant's purse. Accordingly, the Court of Appeals concluded that the trial court erred when it denied defendant's motion to suppress in case number 15CR50447.

Case No. 15CR44342 reversed and remanded; Case No. 15CR50447 reversed and remanded.

Alta Jean Brady, Judge.

Morgen E. Daniels, Deputy Public Defender, argued the cause for appellant. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Case No. 15CR44342 reversed and remanded; Case No. 15CR50447 reversed and remanded.

**TOOKEY, J.**

In this consolidated criminal appeal, defendant appeals two judgments of conviction. In case number 15CR44342, the state charged defendant with a single count of unlawful possession of methamphetamine, ORS 475.894. In case number 15CR50447, the state charged defendant with one count each of unlawful delivery of methamphetamine, ORS 475.890, and unlawful possession of methamphetamine, ORS 475.894. Following the denial of her motions to suppress in both cases, defendant entered conditional guilty pleas to the charged crimes. On appeal, defendant contends that the trial court erred when it denied her motions to suppress in both cases, because the searches were not conducted pursuant to a search warrant and no exception to the warrant requirement provided a constitutional justification for either search.

In case number 15CR44342, the state concedes, and we agree, that the trial court erred when it denied defendant's motion to suppress. Because a discussion of the facts and law underlying our acceptance of the state's concession would not benefit the bench, bar, or public, we conclude that the trial court erred when it denied defendant's motion to suppress in case number 15CR44342 without further discussion. Accordingly, in case number 15CR44342 we reverse and remand.

With regard to the trial court's denial of defendant's motion to suppress in case number   the state contends that the warrantless search was justified by defendant's consent or, in the alternative, by the automobile exception to the warrant requirement. For the reasons expressed below, we conclude that the state failed to offer sufficient evidence to prove that defendant actually consented to a search of her purse. Furthermore, the facts known to the officer at the time of the search did not provide the officer with probable cause to believe that methamphetamine would be found in defendant's car, and, thus, the automobile exception did not justify the warrantless search of defendant's purse. Accordingly, the trial court erred when it denied defendant's motion to suppress in case number 15CR50447. Therefore, in case number 15CR50447, we also reverse and remand.

## I.  BACKGROUND

We state the facts from the suppression hearing in case number 15CR50447 consistently with the trial court's explicit and implicit findings that are supported by constitutionally sufficient evidence in the record. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993); *State v. Barber*, 279 Or App 84, 85, 379 P3d 651 (2016).[1]

Deputy Baltzor pulled defendant over for failing to use her turn signal. Deputy Bartness was in the area and covered Baltzor on the traffic stop "almost immediately" after Baltzor had pulled defendant over. Baltzor obtained defendant's driver's license and paperwork and returned to his police car to run defendant's information while Bartness approached defendant's car to speak to defendant.

When Bartness got to the passenger side of defendant's car, the glove box was open, and he saw two clear unused pipes that were partially wrapped in tissue paper. Based on his training and experience, Bartness had "no doubt in [his] mind that they were meth pipes" because,

---

[1] The unlawfully obtained evidence of methamphetamine possession in case number 15CR44342 was discovered about a month before defendant was stopped in case number 15CR50447. In its brief, the state relies on a deputy's earlier unlawful discovery of methamphetamine in defendant's purse in case number 15CR44342 to argue that defendant consented to a search of her purse in case number 15CR50447. Because the evidence in case number 15CR44342 was discovered unlawfully and should have been suppressed, we do not consider that unlawfully discovered evidence in this case as a justification for the later warrantless search. *See State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) ("[R]ules of law  designed to protect citizens against unauthorized or illegal searches or seizures of their persons, property, or private effects are to be given effect by denying the state the use of evidence secured in violation of those rules against the persons whose rights were violated, or, in effect, by restoring the parties to their position as if the state's officers had remained within the limits of their authority."); *State v. Nicholson*, 89 Or App 306, 309-14, 748 P2d 1028, *rev den*, 305 Or 672 (1988) (concluding that, where previous seizure and discovery of evidence relating to methamphetamine was unlawful, that evidence was properly suppressed and could not be used to support the issuance of a warrant in a different case where the purpose was also to convict defendant for methamphetamine crimes). Even if we were to consider the unlawfully discovered evidence of methamphetamine possession in case number 15CR44342, it would not change our conclusion that the state failed to meet its burden to prove that defendant consented to a search of her purse, because, as we explain below, the deputy could not recall with any precision how he made his request, if any, to search defendant's purse or defendant's response, and the only evidence of defendant's response to any such request, is defendant's testimony that she expressly refused to consent to a search of her purse.

"during [his] career, those exact pipes * * * have always been associated with methamphetamine" and have a distinctive shape.[2] Bartness further testified that the methamphetamine pipes are not used to consume other controlled substances like marijuana, and that, when he finds methamphetamine pipes in a person's car or on their person, he also finds methamphetamine 75 percent of the time. Bartness clarified that, in his experience as a deputy, it is "more likely than not" that he will also find methamphetamine when the methamphetamine pipes are unused, because "[i]f anybody's going to be associated with a meth pipe, they're going to be associated with the use" of methamphetamine. However, in his six-year career, Bartness could only recall one specific instance in which the discovery of an unused methamphetamine pipe resulted in the discovery of additional drugs in the person's vehicle. Furthermore, Bartness acknowledged that unused methamphetamine pipes are not illegal to possess and that "they sell them at stores here in town."

In addition, there was a two-month-old report that someone had knocked on defendant's neighbor's door in the middle of the night and was looking for the house that defendant was living in to purchase methamphetamine.[3] Based on his observation of the unused methamphetamine pipes, his training and experience, and the information that he "had been receiving around town regarding [defendant] and what she had been up to," Bartness testified that he had

---

[2] Baltzor testified that, "[m]ethamphetamine pipes have a really distinct shape. They're typically a small bulb with a small hole on top, and then there's a glass stem that comes off of it. They're almost always clear, and they're pretty consistent in size." Bartness testified that Baltzor's explanation of the appearance of a methamphetamine pipe was consistent with his experience as a deputy.

[3] Baltzor clarified that the two-month old report from defendant's neighbor had been received sometime in August. The stop occurred on October 1.

Baltzor also testified that "[w]e had several concerned citizens at the * * * trailer park * * * where [defendant] lived, that were telling us that [she] was potentially selling narcotics from her trailer." They reported that "there was well-known drug users from the community, which it's a small community, that were in and out of [defendant's] trailer * * * [for] quick stopovers late at night, at odd hours."

Other than those somewhat vague reports of "potential" narcotics sales, which were never confirmed, Baltzor testified about the same two-month old report from defendant's next door neighbor "that someone knocked on her door * * * in an attempt to buy narcotics."

probable cause to believe that methamphetamine would be found in defendant's car.

However, "just to be covered twice," Bartness also decided to ask defendant for consent to search her car because he thought that the issue of probable cause to search "would be a close one." Bartness believed that the unused methamphetamine pipes presented "[a] little gray area" and testified that, if defendant had denied his request for consent to search her car, he "probably [would have] made a phone call to a DA and see what they had to say about it." Accordingly, Bartness approached the driver's side of defendant's car and, without mentioning that he had seen the methamphetamine pipes in the glove box, asked defendant for consent to search her car.

Bartness did not remember exactly how he asked defendant for her consent to search her car or defendant's exact response, but he testified that defendant gave him consent to search her car and that he did not believe that defendant had placed any limitations on where he could search or what he was allowed to search in her car. Bartness "was not too clear" on the following sequence of events because he did not write a report, but he testified that defendant got out of her car and that he "located some methamphetamine *** inside the wallet that was inside of her purse." Bartness could not recall if defendant gave him consent to search her purse or the wallet that was inside of her purse. Defendant testified that, after she had consented to a search of her car, she had taken her purse out of her car and placed it on the hood, and that she expressly refused to consent to a search of her purse.

Before Baltzor finished processing the traffic stop, Bartness "returned to [Baltzor's] patrol car with methamphetamine pipes and methamphetamine." Baltzor secured those items in the patrol car and then went to talk to defendant. Baltzor handcuffed defendant, provided her with *Miranda* warnings, and asked her questions about the pipes and the methamphetamine. Defendant told Baltzor that she and some people from her work had pooled their money to have defendant buy methamphetamine and that she had purchased the methamphetamine and the pipes for two of

her coworkers. Defendant testified that she would not have made those incriminating statements if Baltzor had not arrested her for the methamphetamine that was discovered in the wallet in her purse.

The state charged defendant with one count of unlawful delivery of methamphetamine and one count of unlawful possession of methamphetamine.

Before trial, defendant moved to suppress all of the evidence that was derived from the warrantless search of her purse, including her incriminating statements. Defendant argued that the state had not met its burden to establish that she had consented to a search of her purse, because Bartness could not recall what happened once defendant exited her car or whether defendant gave him consent to search her purse. Defendant also contended that there was "no probable cause" to justify the search under any other exception to the warrant requirement, because "[t]he obser- vation of drug paraphernalia, standing alone, does not con- stitute probable cause to search," and because Bartness "was equivocal about whether he had probable cause to begin a search of defendant's car and purse without her consent."

The state responded that defendant validly con- sented to a search of her car and purse, thereby providing an exception to the warrant requirement. In the alterna- tive, the state argued that the automobile exception to the warrant requirement also justified the warrantless search because Bartness had probable cause to believe that there would be methamphetamine in the car based on his obser- vation of the methamphetamine pipes, his training and experience, and his knowledge of defendant's involvement with methamphetamine in the community.

The trial court denied defendant's motion to sup- press, concluding that "defendant consented to a search of her car, and that this consent included consent to search her purse which was located within the car when defendant con- sented to the search." The trial court did not rule on whether the automobile exception justified the warrantless search of defendant's purse. Following the denial of her motion to suppress, defendant entered a conditional guilty plea to the

charged crimes of possession and delivery of methamphetamine. *See* ORS 135.335(3) ("With the consent of the court and the state, a defendant may enter a conditional plea of guilty or no contest reserving, in writing, the right, on appeal from the judgment, to a review of an adverse determination of any specified pretrial motion. A defendant who finally prevails on appeal may withdraw the plea.").

On appeal, the parties reprise their arguments about whether defendant's consent or the automobile exception justified the warrantless search of defendant's purse and wallet. For the reasons that follow, we conclude that the state failed to offer sufficient evidence to prove that defendant actually consented to a search of her purse. We further conclude that, because Bartness did not have probable cause to believe methamphetamine would be found in defendant's possession, the automobile exception did not justify the warrantless search of defendant's purse, and, thus, we cannot affirm on that basis.

## II.   ANALYSIS

### A.   *Consent*

Article I, section 9, of the Oregon Constitution establishes the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure." A warrantless search is "*per se* unreasonable" under Article I, section 9, unless the search is done pursuant to "one of the few specifically established and well-delineated exceptions to the warrant requirement." *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983) (internal quotation marks omitted). Consent is one of the recognized exceptions to the warrant requirement under Article I, section 9. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992). The consent exception "posits that, by voluntarily granting a governmental actor permission to search a place or thing, the person relinquishes his or her privacy interest in the place or thing so that there is no intrusion by the state into a protected privacy interest that must be justified." *State v. Blair*, 361 Or 527, 535, 396 P3d 908 (2017).

Under the consent exception to the warrant requirement, the state must prove by "a preponderance of the

evidence" that the consent was actually given "under the totality of the circumstances." *State v. Jepson*, 254 Or App 290, 294, 292 P3d 660 (2012). For us to determine whether the alleged consent was "actually" given, "the state must establish with some precision how the law enforcement officers make a request of a defendant[.]" *State v. Musalf*, 280 Or App 142, 152-53, 380 P3d 1087 (2016) (citing *State v. Warner*, 284 Or 147, 161, 585 P2d 681 (1978) ("[A]ppellate courts must know what the state's witnesses contend was actually said, in order for appellate courts to discharge their constitutional function in determining the validity of consent.")).

Here, defendant does not argue that any consent she gave was involuntary. Rather, relying on Bartness's inability to recall with any precision how he asked for consent to search her car or defendant's response, what happened once defendant exited her car, and whether defendant gave him consent to search her purse, and defendant's own testimony that she expressly refused to consent to a search of her purse, defendant claims that she did not consent to Bartness searching her purse *at all*.

As discussed above, Bartness did not remember exactly how he asked defendant for her consent to search her car or defendant's exact response, but Bartness believed that defendant did give him consent to search her car without limitation. Bartness "was not too clear" on what happened next because he did not write a report, but he testified that, after defendant got out of her car, he "located some methamphetamine *** inside the wallet that was inside of her purse." Bartness could not recall what happened once defendant exited her car or whether defendant gave him consent to search her purse with any precision. Thus, the only evidence in the record relating to how Bartness made his request, if any, to search defendant's purse, and defendant's response to any such request, is from defendant's own testimony. Defendant testified that, after she agreed to allow Bartness to search her car, she had taken her purse out of her car and placed it on the hood, and that she expressly refused to consent to a search of her purse.

On this record, considering the totality of the circumstances, we conclude that the state failed to prove by a

preponderance of the evidence that defendant actually consented to a warrantless search of her purse. The only evidence in the record about any request to search defendant's purse is that, after defendant consented to a search of her car, she removed her purse, placed it on the hood of her car, and unambiguously refused to consent to a search of its contents. Because the state failed to establish with any precision how Bartness made his request for defendant's consent to search her car or defendant's response, the evidence is insufficient to establish that the scope of defendant's consent to search her car extended to a search of her purse, or that defendant had consented to a search of her purse once she had removed it from her car. *See Blair*, 361 Or at 539 ("[I]n determining whether a particular search falls within the scope of a defendant's consent, the trial court will determine, based on the totality of circumstances, what the defendant actually intended. However, where, after considering those circumstances, the defendant's intent with respect to the scope of consent is unambiguously expressed, that manifestation of intent is controlling."); *State v. Watts*, 284 Or App 146, 149-52, 392 P3d 358 (2017) (concluding that the state failed to meet its burden to prove that the defendant consented to a warrantless search of his home, because the only evidence of how the request was made was from defendant's own testimony, and the officer's statement could not reasonably be understood as a request to obtain consent); *State v. Lowe*, 144 Or App 313, 318, 926 P2d 332 (1996) (concluding that the state failed to meet its burden to prove that the defendant consented to take field sobriety tests when the record contained no testimony from the officer concerning how he made the request for the defendant to take field sobriety tests and the defendant testified that he felt that he had no choice but to consent to the search). Thus, the trial court erred when it concluded that the state had met its burden to prove that defendant actually consented to a search of her purse.

## B.  *Automobile Exception*

As noted above, Article I, section 9, establishes the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure"

and, under that provision, "warrantless searches are *per se* unreasonable unless they fall within one of the few specifically established and limited exceptions to the warrant requirement." *State v. Bliss*, 363 Or 426, 430, 423 P3d 53 (2018). One such exception to the warrant requirement is the "automobile exception." *Id.* at 431. There are two requirements that must be met for the automobile exception to apply: "(1) the car must have been mobile at the time it was lawfully stopped by the police; and (2) the police had probable cause to believe that the car contained contraband or crime evidence at the time of the search." *Id.* at 438.

With regard to the first requirement—that the car must have been mobile at the time it was lawfully stopped by the police—defendant contends that that requirement was not met because her car had already been stopped for a traffic infraction before Bartness encountered it in connection with a crime. The Supreme Court recently rejected that very argument in *Bliss*. The court concluded that a vehicle is "mobile" for purposes of the automobile exception if it has been lawfully stopped for a traffic violation, and that police may develop the requisite probable cause in the course of an otherwise lawful stop. *Id.* For the reasons that the court expressed in *Bliss*, we reject defendant's argument that her car was not "mobile" because she had already been stopped for a traffic infraction before Bartness encountered it in connection with a crime. Thus, we turn to the second requirement to determine whether Bartness developed probable cause during the lawful stop to believe that methamphetamine would be found in defendant's car.

Even if a vehicle is "mobile," the "automobile exception does not justify a warrantless search in the absence of probable cause to search." *State v. Herrin*, 323 Or 188, 194-95, 915 P2d 953 (1996) (internal quotation marks omitted). "[T]he test for whether the police had probable cause to conduct a search under the automobile exception [is] \*\*\* 'whether a magistrate could issue a constitutionally sound search warrant based on the probable cause articulated by the officers.'" *State v. Tovar*, 256 Or App 1, 12, 299 P3d 580, *rev den*, 353 Or 868 (2013) (quoting *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986)).

"Probable cause exists if the facts on which the officers relied would lead a reasonable person to believe that seizable things will probably be found in the location to be searched. The standard is one of probability, not certainty. In assessing probable cause, a court must consider the totality of the circumstances, including the officer's training and experience. In addition, the facts articulated in support of probable cause must be assessed in a common-sense and realistic fashion."

*State v. Foster*, 350 Or 161, 169, 252 P3d 292 (2011) (internal quotation marks and citations omitted).

Moreover, "in order to search containers within a vehicle," such as defendant's purse, "an officer need not have probable cause to believe that a discrete container holds evidence of crime," because "the proper scope of a search under the automobile exception is defined by the warrant that the officer could have obtained." *State v. Furrillo*, 274 Or App 612, 616, 362 P3d 273 (2015) (internal quotation marks, brackets, and emphasis omitted). Defendant's purse "was subject to search" under the automobile exception if it was "within the vehicle that *** [Bartness reasonably] expected to contain contraband or crime evidence." *Id*. Thus, the question reduces to whether the facts on which Bartness relied "would lead a reasonable person to believe" that methamphetamine would "probably" be found in defendant's car.[4] *Foster*, 350 Or at 169 (internal quotation marks omitted). Again, it is the state's burden to prove that a warrantless search was supported by probable cause. ORS 133.693(4).

Here, the facts known to Bartness at the time he searched defendant's car were that: (1) Bartness had

---

[4] We reject defendant's argument that Bartness did not subjectively believe that he would probably find methamphetamine in defendant's car after viewing the unused methamphetamine pipes because Bartness "was equivocal about whether he had probable cause to begin a search of defendant's car and purse without her consent." As noted, Bartness testified that he asked for consent "just to be covered twice," because he thought that the issue of probable cause to search "would be a close one." However, Bartness also repeatedly testified that he believed that, when he finds methamphetamine pipes, it is "more likely than not" that he will also find methamphetamine. That testimony is sufficient to establish Bartness's subjective belief that that he would probably find methamphetamine in defendant's car after viewing the unused methamphetamine pipes. *State v. Chambless*, 111 Or App 76, 80, 824 P2d 1183, *rev den*, 313 Or 210 (1992) (With regard to probable cause, "'[p]robably' means 'more likely than not.'").

received a two-month-old report from defendant's neighbor that indicated that defendant was living in a house known for distributing methamphetamine, (2) defendant had two unused methamphetamine pipes in the glove box of her car, and (3) based on his training and experience, Bartness subjectively believed that it is more probable than not that he will find methamphetamine when he finds methamphetamine pipes, even when the pipes are unused, because "[i]f anybody's going to be associated with a meth pipe, they're going to be associated with the use" of methamphetamine.

We turn to the first question of what weight, if any, should be given to the information provided by defendant's neighbor. As we explain below, the evidence that defendant was living in a house known for distributing methamphetamine two months earlier adds little—if anything—to the probable cause calculus under these circumstances.

As noted, Bartness had received information that a person had knocked on defendant's neighbor's door two months before in the middle of the night and was looking for the house that defendant was living in at the time to purchase methamphetamine. Based on that information, Bartness testified that defendant "was involved with [the] distribution, delivery, and possession of methamphetamine." The only specific information in this record that we can ascertain about the house defendant was living in two months before the stop is that there was a single possible sale of an unknown quantity of methamphetamine that occurred at a location other than defendant's car. *See State v. Wilson*, 178 Or App 163, 172-73, 35 P3d 1111 (2001) (concluding that the affidavit was insufficient to establish probable cause to search the defendants' residence where "the affidavit described a single sale of an unknown quantity of methamphetamine that occurred at some undisclosed time at a location other than defendants' residence"). That evidence is insufficient to permit a reasonable inference that methamphetamine would probably be found in defendant's car two months later.

"Oregon courts have long emphasized that information about drugs is prone to staleness." *State v. Chase*, 219 Or App 387, 393, 182 P3d 274 (2008). That is especially

true where, as here, the information about the house defendant was residing in was approximately two months old, and the record does not indicate who was in possession of the methamphetamine at that house, what the prior history of methamphetamine distribution at the premises was, and what amount of methamphetamine—if any—had been sold at that house. *See State v. Poulson*, 150 Or App 164, 171, 945 P2d 1084 (1997) ("In evaluating the affidavit, the lapse of time after which information becomes stale depends on all the circumstances." (Internal quotation marks omitted.)); *State v. Kittredge/Anderson*, 36 Or App 603, 606-07, 585 P2d 423 (1978) (where the search warrant affidavit stated that a confidential reliable informant had been at a certain premises within the last 96 hours and had observed marijuana while there, averment was insufficient to establish probable cause because it did not state who was in possession of the marijuana, what the prior history of marijuana use at the premises was, or what amount of marijuana had been at the premises, and, without such information, the magistrate had no way of knowing whether drugs would continue to be at the premises). Because there is no evidence that the drug distribution was ongoing, or that defendant was, in fact, the person selling an unknown quantity methamphetamine in that home, it is not reasonable to infer from that evidence that defendant would have methamphetamine in her car two months later. *See State v. Foster*, 233 Or App 135, 143, 225 P3d 830 (2010), *aff'd*, 350 Or 161, 252 P3d 292 (2011) (concluding that an informant's tip should be given little weight in the probable cause analysis where the tip was a "nonspecific" tip that the defendant was selling small quantities of methamphetamine, no "purchaser was identified, no location was specified, *** no basis for the informant's knowledge was demonstrated," and, "by the time of the search[,] *** the tip was six months old").

Furthermore, there is no testimony from Bartness regarding his training and experience that might provide that essential link. *See State v. Goodman*, 328 Or 318, 328, 975 P2d 458 (1999) ("Facts derived from training and experience may contribute th[e] necessary factual nexus in a determination of probable cause."). There is no testimony from Bartness regarding, for example, why, based on

his training and experience, the possible distribution of an unknown quantity of methamphetamine from the house defendant lived in might indicate that defendant herself continued to sell methamphetamine and transport it in her car, and, therefore, would have methamphetamine in her car two months later. *See State v. Huff*, 253 Or App 480, 490-91, 291 P3d 751 (2012) (observing that there was no averment from the officer regarding "the typical recidivist behavior of drug dealers or why, based on the officer's training and experience, the possession of a user amount of drugs by a former dealer or consorting with another prior drug offender *might* indicate that defendant was continuing to deal in illegal substances" (emphasis in original)). Accordingly, because it would require far "too great [of] an inferential leap" to conclude from that evidence that methamphetamine would probably be found in defendant's car two months later, we conclude that the report from defendant's neighbor should be accorded no weight whatsoever in our probable cause calculous. *State v. Bivins*, 191 Or App 460, 470, 83 P3d 379 (2004).[5]

What we are left with then, is defendant's possession of two unused methamphetamine pipes and Bartness's subjective belief that, based on his training and experience, it was more likely than not that he would find evidence of methamphetamine based on his discovery of those pipes.

To begin with, we have held that "additional facts beyond the current possession [of a small amount of methamphetamine and a pipe containing residue] must be presented to establish the probability that further evidence of criminal activity will be found at the suspected location." *Huff*, 253 Or App at 486-88. "We have [also] emphasized that an officer's observation of a defendant's intoxication is insufficient to establish the inference that a defendant presently possesses a controlled substance." *State v. Schmitz*, 299 Or App 170, 177, 448 P3d 699 (2019).

---

[5] For those same reasons, we decline to give any weight to the even vaguer reports of "potential" narcotics sales at defendant's trailer from unnamed "concerned citizens." 304 Or App at 333 n 3. *See State v. Bertsch*, 251 Or App 128, 134, 284 P3d 502 (2012) ("We have repeatedly said that a person's presence in a location associated with drug activity is insufficient to support an objectively reasonable belief that that person is himself or herself engaged in drug activity.").

We conclude that the same must be true for the lawful possession of *unused* drug paraphernalia. *Compare Huff*, 253 Or App at 483, 492-93 (concluding that discovery of a "meth pipe with residue" in the defendant's RV was insufficient for the affidavit to establish probable cause to search the defendant's RV, because "the affidavit * * * d[id] not provide *any* potential linkage between * * * the presence of a single implement of use (the pipe) and the likelihood of more drugs or other implements that might bear traces of the drug, let alone a direct one" (emphasis in original)) *with State v. Klingler*, 284 Or App 534, 539-45, 393 P3d 737 (2017) (distinguishing *Huff* and concluding that the affidavit provided the necessary additional evidence "beyond mere possession of a user quantity of narcotics" to search the defendant's RV where the defendant had more than two ounces of marijuana in his truck, but also admitted that he had more marijuana in his RV, and the defendant's landlord also admitted to processing marijuana for the defendant to distribute on the same property on which the RV was located, and the defendant's landlord showed officers the marijuana that she was processing in her home).

That is, something more than the discovery of unused methamphetamine pipes is required to establish probable cause of current possession of methamphetamine. As to that issue, our analyses in *Schmitz* and *State v. Oller*, 277 Or App 529, 371 P3d 1268 (2016), *rev den*, 361 Or 803 (2017)—although those cases involve the less stringent standard of reasonable suspicion—are instructive.

In *Oller*, the officer stopped the defendant for a traffic violation after noticing that the defendant's passenger was a known drug user that was on probation for drug crimes. 277 Or App at 530-31. After he finished processing the traffic violation, the officer lawfully observed syringes in the pocket of the defendant's driver's side door that "were of a type that intravenous drug users typically use." *Id*. At that point the officer believed he had reasonable suspicion to extend the stop to investigate the defendant for a drug offense. *Id*. We first concluded that the officer's "observation of the syringes alone could not support the inference that defendant used them to inject illegal drugs" because the officer did not testify "that the syringes [the defendant]

possessed were *unique* to IV drug users" or give any description of the syringes that would indicate that the defendant was an active drug user by, for example, explaining whether the syringes were "new or used, packaged or loosely strewn, clean or contaminated." *Id*. at 537 (emphasis in original). However, we also concluded that, even if it was reasonable to infer that the defendant was a drug user based on the discovery of the syringes, "evidence of a person's past or even routine drug use, without additional evidence, does not give rise to the reasonable inference that the person currently possesses drugs." *Id*. at 538. Accordingly, we concluded that the officer's suspicion of current drug possession was not objectively reasonable, and, therefore, the officer unlawfully seized the defendant. *Id*.

In this case, the officer must meet the more demanding standard of probable cause. *See State v. Daniels*, 234 Or App 533, 538, 228 P3d 695, *rev den,* 349 Or 171 (2010) ("'Probable cause' is a more rigorous standard than mere suspicion; even a well-warranted suspicion does not suffice, because 'a suspicion, no matter how well founded, does not rise to the level of probable cause.'" (Quoting *State v. Verdine*, 290 Or 553, 557, 624 P2d 580 (1981).)).

The state notes that, in this case, Bartness testified that the pipes were *unique* to methamphetamine use, and that he described the pipes in detail—including that they were unused. But, as in *Oller*, even if we assume that it was reasonable to infer that the defendant was a current methamphetamine user based on the discovery of the unused methamphetamine pipes, "evidence of a person's past or even routine drug use, without additional evidence, does not give rise to the reasonable inference that the person currently possesses drugs." *Oller*, 277 Or App at 538; *cf. State v. Holcomb*, 202 Or App 73, 78, 121 P3d 13, *adh'd to as modified on recons*, 203 Or App 35, 125 P3d 22 (2005) (stating that no Oregon cases have endorsed the proposition that "a person's recent drug use is sufficient, without more, to establish reasonable suspicion of present drug possession[,]" and declining to do so because adopting the state's position would "effectively sanction nonparticularized, status-based stops of habitual drug users"). Additionally, Bartness acknowledged that the unused pipes were lawful to possess

and that the methamphetamine pipes are sold at stores in town. *See State v. Lane*, 135 Or App 233, 239-41, 898 P2d 1358, *rev den*, 322 Or 360 (1995) (concluding that the defendant's possession of a marijuana pipe with residue and a scale, for which a person could not be arrested, along with the defendant's nervousness and agitation, did not provide the officer with probable cause to believe that the defendant was in possession of an arrestable amount of marijuana or some other controlled substance).

The mere possibility that defendant had methamphetamine in her car is not enough to satisfy the more demanding standard of probable cause. In the absence of any specific and reliable information suggesting that defendant had recently been using methamphetamine in her car, or that defendant had recently been involved in any other sort of ongoing drug crime, like the distribution of methamphetamine out of her car, the circumstances here do not establish probable cause to believe that evidence of methamphetamine would be found in her car. *Cf. State v. Rudnitskyy*, 266 Or App 560, 565, 338 P3d 742 (2014), *rev den*, 357 Or 112 (2015) (concluding that the defendant's furtive gesture with a plastic straw that the officer knew was commonly used to smoke heroin when the officer approached defendant's car, combined with an informant's report that a drug transaction had occurred between people in the defendant's car and those in a second car moments before, and the officer's knowledge that the parking lot in which the car was located was a common location for the distribution of heroin, constituted specific and articulable facts that supported a reasonable suspicion that the defendant was engaged in illegal drug activity).

To the extent that the state advances an argument that the "something more" required for probable cause may be met by combining Bartness's training and experience with his observation of the unused methamphetamine pipes, we rejected a similar argument in *Schmitz* applying the less stringent standard of reasonable suspicion.

In *Schmitz*, the "only specific and articulable fact directly related to defendant [wa]s that he appeared intoxicated based on his jerky movements, head shaking, body

vibrations, and mumbling." 299 Or App at 177. The officer "testified as to his extensive training and experience, including to his knowledge that drug users often retain implements of drug use that are likely to contain trace amounts of the drug." *Id*. at 178. We rejected the state's "argument that the 'something more' required for reasonable suspicion may be met by combining an officer's training and experience with observations of intoxication," and concluded that the state failed to prove that the officer had reasonable suspicion of current drug possession. *Id*. We explained that "[a]n officer's training and experience may help an officer interpret specific and articulable fact in a given situation or event, but training and experience is not, in and of itself, a specific and articulable fact that can provide the 'something more' to establish reasonable suspicion of current drug possession." *Id*.

Here, Bartness testified to his extensive training and experience, including his knowledge that the pipes were used for methamphetamine and that, when he had discovered methamphetamine pipes in the past, it was more likely than not that he would also find methamphetamine associated with those pipes. More specifically, on one other occasion in his six-year career, he had found methamphetamine in a vehicle that was associated with an unused methamphetamine pipe. Accordingly, based on his training and experience and the discovery of the unused methamphetamine pipes, Bartness believed that it was more likely than not that he would discover methamphetamine in defendant's car.

But Bartness's testimony that people who possess methamphetamine pipes are likely to also possess methamphetamine is not particularized to defendant or her car and does not—by itself—constitute a specific and articulable fact on which probable cause can be based. Although Bartness's training and experience provided him with the knowledge to identify the pipes as unused methamphetamine pipes, the only specific and articulable fact particularized to defendant or her car permitting Bartness to infer current possession of methamphetamine was defendant's possession of the two unused methamphetamine pipes—which, as noted, merely

suggested that defendant might be a current drug user. Guided by *Schmitz*, we conclude that that is not enough to meet the more demanding standard of probable cause, because, without "something more," Bartess's testimony did not provide enough facts about defendant or her car that, combined with his training and experience, would lead a reasonable person to believe that evidence of current drug possession would probably be found in defendant's car. *Id.* at 177-78.

Under these circumstances, we reject the state's argument that the "something more" required for probable cause may be met by simply combining Bartness's training and experience with his observation of the unused methamphetamine pipes. *See State v. Daniels*, 234 Or App 533, 541, 228 P3d 695, *rev den*, 349 Or 171 (2010) ("The phrase 'training and experience,' in other words, is not a magical incantation with the power to imbue speculation, stereotype, or pseudoscience with an impenetrable armor of veracity.").

We do not doubt that, under the totality of the circumstances, Bartness suspected that defendant had methamphetamine in her car; "but a suspicion, no matter how well founded, does not rise to the level of probable cause." *Verdine*, 290 Or at 557. In other words, the facts on which Bartness relied "would [not] lead a reasonable person to believe" that methamphetamine would "probably" be found in defendant's car. *Foster*, 350 Or at 169 (internal quotation marks omitted). Accordingly, we conclude that the trial court erred when it denied defendant's motion to suppress in case number 15CR50447.[6]

### III.  CONCLUSION

The trial court erred when it denied defendant's motion to suppress in case number 15CR44342. The trial court also erred when it denied defendant's motion to suppress in case number 15CR50447. Accordingly, we reverse and remand both cases.

Case No. 15CR44342 reversed and remanded; Case No. 15CR50447 reversed and remanded.

---

[6] The state did not raise an argument that defendant's incriminating statements were not subject to suppression because the statements were sufficiently attenuated from the unlawful discovery of the methamphetamine.